UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

JOSEPH DuMOUCHELLE and
MELINDA ADDUCCI,
        Debtors.
_____/

Case No. 19-54531
Chapter 7
Hon. Lisa S. Gretchko

MICHAEL A. STEVENSON, CHAPTER 7
TRUSTEE AND ASSIGNEE OF THE RIGHTS
OF THOMAS RITTER,

        Plaintiff,

v.

WILLIAM NOBLE RARE JEWELS, L.P. and
WILLIAM NOBLE, jointly and severally,

        Defendants.
_____/

Adv. Pro. No. 21-04041-lsg
Hon. Lisa S. Gretchko

**OPINION DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT**

## Introduction

On October 11, 2019, Joseph DuMouchelle ("Joseph") and Melinda Adducci ("Melinda" and, together with Joseph, the "Individual Debtors") filed Chapter 11 bankruptcy. On December 3, 2019, their bankruptcy case was converted from Chapter 11 to Chapter 7. Michael Stevenson ("Stevenson" or "Plaintiff") is

currently the Trustee in the Individual Debtors' Chapter 7 bankruptcy case. On February 5, 2021, the complaint ("Complaint"; ECF No. 1) in this adversary proceeding ("Adversary Proceeding") was filed against William Noble Rare Jewels, L.P. ("WNRJ") and William Noble ("Noble" and, together with WNRJ, the "Defendants") seeking to recover $4.25 million that was transferred to WNRJ on February 7, 2019.

The Adversary Proceeding Scheduling Order ("Scheduling Order"; ECF No. 25) was entered on August 13, 2021. It incorporated the parties' August 5, 2021 Rule 26(f) report ("26(f) Report"; ECF No. 24). The 26(f) Report established September 15, 2021 as the deadline to join additional parties and to amend pleadings, and February 15, 2022 as the discovery completion deadline.

The Scheduling Order was amended several times to extend the discovery completion deadline and the dispositive motion deadline.[1] The last amendment to the Scheduling Order extended the discovery completion deadline to September 19,

---

[1] On February 1, 2022, the Court entered an Order Amending Scheduling Order (ECF No. 38) which, *inter alia,* extended the discovery completion deadline to March 23, 2022, and the dispositive motion deadline to April 8, 2022. On March 24, 2022, the Court entered an Order Granting in Part and Denying in Part Plaintiff's Motion for Extension of Governing Dates and to Compel Mediation (ECF No. 58) which, *inter alia,* extended the discovery completion date to May 23, 2022, and the dispositive motion deadline to June 15, 2022. On August 3, 2022, the Court entered an Order Regarding Discovery Matters and Extending Governing Dates (ECF No. 72) which, *inter alia,* extended the discovery completion deadline to September 19, 2022 (subject to restrictions set forth in that order), and the dispositive motion deadline to October 11, 2022.

2022, and extended the dispositive motion deadline to October 11, 2022. There has never been an extension of the September 15, 2021 deadline to amend pleadings.

On October 11, 2022 (i.e., after the close of discovery), Defendants filed a motion for summary judgment ("SJ Motion"). Plaintiff filed a response, and the Defendants filed a reply. Oral argument on the SJ Motion was held on January 18-19, 2023, and the Court took the matter under advisement.

On January 31, 2023 (after oral argument on the SJ Motion, and more than sixteen months after the September 15, 2021 deadline to amend pleadings), Plaintiff filed a Motion For Leave To File First Amended Complaint ("Original Motion to Amend"; ECF No. 104); this motion was corrected on February 7, 2023 ("Corrected Motion to Amend"; ECF No. 107 and, together with the Original Motion to Amend, the "Motion to Amend"). On February 21, 2023, Defendants filed a response to the Motion to Amend ("Response"; ECF No. 108). Oral argument on the Motion to Amend was originally scheduled for March 17, 2023, however the parties stipulated to adjourn it to April 14, 2023.

At the conclusion of the April 14, 2023 oral argument on the Motion to Amend, the parties stated that they were willing to engage in mediation. On April 27, 2023, the Court entered a stipulated order for mediation (ECF No. 118) that required mediation to conclude by May 15, 2023. On May 11, 2023, the Court entered a stipulated order (ECF No. 121) extending the mediation conclusion date

to June 2, 2023. After a status conference on June 12, 2023, the Court entered a stipulated order (ECF No. 127) extending the mediation conclusion date through July 18, 2023. Status reports were filed on July 25, 2023 (ECF No. 129) and October 3, 2023 (ECF No. 133), and status conferences were held on August 11, 2023 and October 6, 2023 to advise the Court whether mediation appeared to be a productive endeavor. At the October 6, 2023 status conference, the parties reported that the matter still has not been resolved despite months of discussion. Consequently, at the October 6, 2023 status conference the Court determined that it was time for the Court to rule on, *inter alia,* the Motion to Amend

After carefully considering the record, the Court denies the Motion to Amend. This opinion explains the Court's reasons for doing so.

**Jurisdiction**

This Court has subject matter jurisdiction over this Adversary Proceeding under 28 U.S.C. §§ 1334(b), 157(a), 157(b) and Local Rule 83.50(a) (E.D. Mich.) Plaintiff's claims under 11 U.S.C. §§ 548, 550, 551 and 502 (i.e., Counts 1-4) are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (H). Plaintiff's claims in Counts 5-8 of the Complaint are non-core.

Defendants filed a jury demand. On September 3, 2021, the parties filed a joint motion for withdrawal of the reference of this Adversary Proceeding for purposes of trial. On September 28, 2021, the U.S. District Court (Judge Stephen J.

Murphy, III) entered an order granting the parties' joint motion for withdrawal of the reference *for trial*.[2] Consequently, this Court has jurisdiction to hear and determine the Motion to Amend.[3]

**Background Facts**

WNRJ is a jewelry company that buys and sells jewelry on consignment. Noble is one of its owners. In 2017, WNRJ began doing business with Joseph DuMouchelle Fine & Estate Jewellers, L.L.C. (the "LLC") and Joseph. On November 17, 2019 (i.e., approximately one month after the Individual Debtors filed their Chapter 11 bankruptcy), an involuntary Chapter 7 bankruptcy petition was filed against the LLC. Mark Shapiro ("Shapiro") was appointed to serve as the Chapter 7 Trustee of the LLC's bankruptcy estate.

On February 5, 2021, Fred Dery (as then Trustee of the Individual Debtors' estate and as assignee of the rights of Thomas Ritter ("Ritter")) filed the Complaint in this Adversary Proceeding against Defendants. In 2021, Fred Dery died.

---

[2] The parties' Motion to Withdraw the Reference was transmitted to the U.S. District Court for the Eastern District of Michigan and was assigned U.S. District Court Case No. 2:21-cv-12087. Judge Murphy's Order Granting Motion to Withdraw the Reference is filed at ECF No. 29 in the Adversary Proceeding.
[3] Judge Murphy's September 28, 2021 Order administratively closed Case No. 2:21-cv-12087 and required the parties to file notice of any motions filed in this Adversary Proceeding and any decisions issued by this Bankruptcy Court in this Adversary Proceeding.

5

21-04041-lsg    Doc 135    Filed 11/20/23    Entered 11/20/23 16:53:16    Page 5 of 18

Stevenson was appointed the successor Chapter 7 Trustee in the Individual Debtors' bankruptcy case, and he became the Plaintiff in this Adversary Proceeding.

Mark Shapiro, as Trustee of the LLC bankruptcy estate, did not join as a plaintiff in this Adversary Proceeding nor did he assign claims of the LLC estate to Plaintiff. The Complaint does not pursue any causes of action on behalf of the LLC's bankruptcy estate.

On March 8, 2021, Defendants filed an answer and affirmative defenses in this Adversary Proceeding ("Answer"; ECF No. 13). Paragraphs 3, 5, 11, and 13 of Defendants' affirmative defenses state:

> 3. The Complaint fails because Joseph DuMouchelle never received the funds referenced in the Complaint. The transfer from Ritter was made to DuMouchelle Jewellers, and the transfer to Noble, L.P. was made by DuMouchelle Jewellers, not by Joseph DuMouchelle.
>
> 5. Any recovery by Plaintiff on the grounds of fraudulent transfer are barred because the alleged transfer was not a transfer of an interest in property held by Mr. DuMouchelle or Mr. DuMouchelle's estate.
>
> 11. Any recovery by Plaintiff under any theory set forth in the Complaint is barred because title to the funds was held by DuMouchelle Jewellers before any transfer was made to Noble, L.P. *Medilink Ins. Co. v. Comerica Bank*, Case No. 09-13692, 2011 U.S. Dist. LEXIS 30203, *19, 2011 WL 1103644 (E.D. Mich. March 23, 2011).
>
> 13. Any recovery by Plaintiff under any theory set forth in the Complaint is barred because Noble, L.P., as a creditor of Mr. DuMouchelle and DuMouchelle Jewellers, qualifies as a good faith purchaser who takes good title. DuMouchelle and/or DuMouchelle Jewellers effectively purchased debt reduction by making the alleged transfers to Noble. *Genesee Merchants Bank & Trust Co. v. Tucker Motor Sales*, 143 Mich. App. 339, 345; 372 N.W.2d 546, 548 (Mich.

6

21-04041-lsg    Doc 135    Filed 11/20/23    Entered 11/20/23 16:53:16    Page 6 of 18

App. 1985) (satisfaction of antecedent debt is sufficient for a creditor to qualify as a good faith purchaser).

In other words, when the Answer in this Adversary Proceeding was filed on March 8, 2021, Defendants raised the issues of (i) whether the transfer to Defendants was from Joseph or the LLC, and (ii) WNRJ's good faith.

**Matters Acknowledged During Oral Argument On**
**Defendants' Summary Judgment Motion**

As noted above, on October 11, 2022, Defendants filed their SJ Motion. Plaintiff filed a response, and Defendants filed a reply. Oral argument on the SJ Motion was held on January 18-19, 2023, and the Court took the matter under advisement.

During oral argument on the SJ Motion, the parties acknowledged the following:

1. Plaintiff is pursuing Counts 1-4 in his capacity as Trustee of the Individual Debtors' bankruptcy estate;

2. Plaintiff is pursuing Counts 5-8 in his capacity as assignee of Ritter;

3. Ritter wire transferred $12 million to the LLC's bank account on February 6, 2019;

4. Because Ritter voluntarily transferred the $12 million to the LLC bank account (albeit based on Joseph's fraud), under applicable law[4] voidable title to the $12 million passed *from* Ritter; and

5. $4.25 million of the $12 million from Ritter was transferred from the LLC's bank account to WNRJ's bank account on February 7, 2019.

Although Plaintiff acknowledges that, under applicable law, voidable title to the $12 million passed from Ritter when he voluntarily transferred the $12 million to the LLC's bank account, Plaintiff contends that Joseph received the voidable title that passed from Ritter because Joseph merely used the LLC's bank account to "funnel" the $12 million obtained through his defrauding Ritter.

Consistent with their affirmative defenses 3, 5, and 11 (filed on March 8, 2021), Defendants argue that voidable title to the $12 million passed from Ritter to the LLC (rather than to Joseph) because Ritter wired the $12 million to the LLC's bank account.

While the Court was preparing to rule on Defendants' SJ Motion, Plaintiff filed the Motion to Amend which attached a proposed first amended complaint ("Proposed Amended Complaint"). The Proposed Amended Complaint was not "redlined" to show revisions from the original Complaint. However, the Proposed

---

[4] The parties acknowledge that *In re Newpower,* 233 F.3d 922 (6th Cir. 2000) and *People v. Malach,* 202 Mich. App. 266 (1993) apply and establish this proposition.

Amended Complaint appears to revise several existing allegations in the original Complaint and to add several new allegations, including:

> 10. Plaintiff has an interest in the property that is the subject of the present case by virtue of the fact that, as set forth herein, Joseph DuMouchelle received voidable title to the property as a result of his actions in defrauding Creditor Thomas Ritter ("Ritter").
>
> 11. In addition, although the property that is the subject of the present case was money that was deposited into a bankruptcy account in the name of DuMouchelle's entity, Joseph DuMouchelle Fine & Estate Jewelry, LLC ("the LLC" or "DuMouchelle's LLC"), DuMouchelle was not separate from the LLC in connection with the present transaction and/or otherwise. DuMouchelle used the LLC as a mere instrumentality and to commit fraud. He used the company as a tool to park money that he obtained through criminal means, and to distribute it as he saw fit. Because the money, as set forth <u>infra,</u> belonged to Creditor Thomas Ritter, the LLC and DuMouchelle caused loss/injury to Ritter and the Bankruptcy Estate.
>
> 26. Noble knew that DuMouchelle was committing wrongful and/or criminal acts at the time the Funds Wired to Noble took place.
>
> 27. Noble had engaged in at least ten (10) jewelry consignment transactions with DuMouchelle prior to that time, each of which were plagued by DuMouchelle's corrupt conduct. DuMouchelle sold consigned items at auctions for less than the consigned strike price, failed to tender proceeds from sales, and otherwise absconded with jewelry items. Noble filed a lawsuit against DuMouchelle as a result, involved the police in attempting to recover the stolen items, and later reported DuMouchelle to the FBI.
>
> 28. In light of Noble's knowledge of DuMouchelle's wrongful/criminal conduct at the time, Noble did not receive the Funds Wired to Noble in good faith. At the very least, Noble was on inquiry notice that the Funds Wired to Noble were from illegitimate sources and/or that DuMouchelle was insolvent at the time. As such, Noble had a legal duty to investigate the sources and had a reasonable avenue to do so as he could have required DuMouchelle to produce bank records

to show where the funds originated. Once that was determined, a simple inquiry with the originator of the funds would have confirmed whether the funds were legitimately obtained.

29. Despite the fact that DuMouchelle wrongfully obtained the Funds Wired to Noble and passed them on to Noble, who received them in bad faith, Noble has not returned the funds to Ritter or to Plaintiff.

50. DuMouchelle obtained the Funds Wired to Noble without proper authorization.

51. Noble improperly received the Funds Wired to Noble due to a lack of good faith as set forth supra.

53. Although DuMouchelle obtained voidable title to the Funds Wired to Noble as the result of his defrauding Noble, that title was subject to Ritter's claim that it should, in fact, be voided. And because Noble did not receive the funds in good faith as set forth above, good title did not pass to Noble. At most, DuMouchelle's voidable title, subject to Ritter's claim that it should be voided passed. As a result, Noble received a benefit from Ritter without exchanging anything of value with Ritter.

57. As set forth above, The Funds Wired to Noble did not rightfully belong to Noble.

66. Contrary to Plaintiff's rights, as set forth above, to exclusive use and enjoyment of the Funds Wired to Noble, Noble took possession of the funds, retained them, and has not returned them. As a result, Noble has converted the Funds Wired to Noble to his own uses.

67. In light of Noble's bad faith as set forth above, Noble received and possessed the converted and/or stolen Funds Wired to Noble knowing that they were converted and/or stolen at the time.

68. DuMouchelle's wrongful action with regard to Ritter and the Funds Wired to Noble are sufficient to constitute "stolen" property for purposes of MCL 600.2919(a).

10

21-04041-lsg    Doc 135    Filed 11/20/23    Entered 11/20/23 16:53:16    Page 10 of 18

In the Motion to Amend (and the brief in support thereof), Plaintiff states (repeatedly) that he does not believe that the original Complaint needs to be amended but, if the Court disagrees, then the Court should permit Plaintiff's requested amendment. During oral argument on the Motion to Amend, Plaintiff: (i) reiterated the foregoing statement, (ii) acknowledged that the Motion to Amend was filed long after the September 15, 2021 deadline for amendments set forth in the Scheduling Order (and the Rule 26(f) Report), and (iii) stated that the Motion to Amend was not filed in response to any new fact learned after the close of discovery but, instead, was filed to bolster Plaintiff's original Complaint in case the Court, in ruling on Defendants' SJ Motion, held that the allegations in the original Complaint were deficient.

Defendants argue that they would be seriously prejudiced if the Motion to Amend is granted so late in this case—after the close of discovery and after the conclusion of oral argument on Defendants' SJ Motion—especially because the Proposed Amended Complaint revises several allegations and contains several new allegations, many of which are fact-intensive and will require significant additional discovery.

## Discussion

Under Fed.R.Civ.P. 15(a)(2)[5] "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Plaintiff argues that because Fed.R.Civ.P. 15(b) empowers a court to permit amendment of pleadings during and after trial, then this Court should grant the Motion to Amend even though it was admittedly filed "late in the case".

Plaintiff's argument misses the mark and conflates Rules 15(a) and 15(b). This Adversary Proceeding is still in the pretrial stage. Consequently, Rule 15(a)—titled "**Amendments Before Trial**" governs. Although Rule 15(b)[6] permits

---

[5] Fed.R.Civ.P. 15 is applicable to this Adversary Proceeding by virtue of Fed.R.Bankr. P. 7015. Fed.R.Civ.P. 15(a)(1) permits amending as a matter of course within 21 days after the events described therein. Plaintiff's Motion to Amend does not invoke Fed.R.Civ.P. 15(a)(1), nor could it do so.

[6] Rule 15(b) states:

>  **(b) Amendments During and After Trial.**
>
>  **(1)** *Based on an Objection at Trial*. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
>  **(2)** *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be

amendments during and after trial, by its very terms Rule 15(b) does not apply in the pretrial context that this Adversary Proceeding presents. And the fact that Rule 15(b) permits amendments during and after trial does not somehow "rewrite" Rule 15(a) to require this Court to permit amendment to pleadings at any time.

Although the parties repeatedly amended the Scheduling Order to extend the discovery completion deadline and the dispositive motion deadline, the deadline to amend pleadings has never been extended beyond September 15, 2021 (which is the date to which the parties agreed in their August 5, 2021 26(f) Report).

During oral argument, Plaintiff acknowledged that the Motion to Amend also triggers Fed.R.Civ.P. 16(b)(4),[7] which provides that the Scheduling Order may only be modified for good cause and with the judge's consent.

The Court is mindful of the fact that Rule 15 requires that leave to amend should be freely given when justice so requires. However, "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether

---

> treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

[7] Rule 16 is applicable to this Adversary Proceeding by virtue of Fed.R.Bankr.P. 7016.

13

21-04041-lsg    Doc 135    Filed 11/20/23    Entered 11/20/23 16:53:16    Page 13 of 18

amendment is proper under Rule 15(a)." *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003).

Plaintiff essentially argues that good cause exists in this case because of the arguments raised in connection with the SJ Motion briefing and oral argument. The Court disagrees for several reasons.

First, Plaintiff's repeated statement[8] that he does not believe that an amended complaint is necessary acknowledges that there is no cause, much less good cause, to modify the Scheduling Order to extend the deadline for motions to amend after the close of discovery and after the hearing on the SJ Motion.

Second, this Court is required to evaluate prejudice to Defendants. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). In *Leary*, the plaintiff wanted to amend to change a legal theory even though discovery had closed, and the defendant had filed a summary judgment motion. The Sixth Circuit upheld the district court's decision to deny leave to amend because having to reopen discovery to defend a new claim at that stage in the case constituted significant prejudice to the defendant.

---

[8] This statement appears once on page 1 of the Motion to Amend, once on page 3 of Plaintiff's brief in support of the Motion to Amend, and twice on page 6 of that brief. Plaintiff repeated this statement during oral argument on the Motion to Amend.

Third, the two main issues that Plaintiff now seeks to raise via the Motion to Amend—which Plaintiff refers to as the "Standing Additions" and the "Bad Faith Additions"—were raised by Defendants on March 8, 2021, when Defendants filed their affirmative defenses asserting that: (i) the funds involved in this Adversary Proceeding were never property of Joseph and, instead, belonged to the LLC, and (ii) WNRJ received funds from Joseph in good faith.[9] Based on their affirmative defenses, Defendants argued that Plaintiff's fraudulent transfer claims must fail. Plaintiff waited nearly two years—from March 8, 2021 to January 31/February 7, 2023—to file the Motion to Amend. Defendants' assertions that the LLC (rather than Joseph) received voidable title to the transferred funds and that Defendants received the funds in good faith were not new defenses raised for the first time in the SJ Motion. Instead, these defenses appear in the record dating back to the Defendants' affirmative defenses raised on March 8, 2021.

Finally, Plaintiff seeks to amend the Complaint to include "Standing Additions". However, Defendants do not argue in the SJ Motion that Plaintiff lacks standing to bring any of the counts in the Complaint. Instead, since March 8, 2021 when Defendants filed their Answer (and affirmative defenses), Defendants have maintained that the funds were not property of Joseph or Melinda and,

---

[9] Plaintiff also seeks to amend to clarify parts of Count 8 of the Complaint.

therefore, that Plaintiff cannot establish one of the very elements of a fraudulent transfer cause of action in this Adversary Proceeding in the Individual Debtors' bankruptcy case (i.e., that there was a transfer of the Individual Debtors' property). There is a difference between standing to bring a claim, and the ability to prove each element of that claim. The two concepts are separate, but Plaintiff appears to conflate them.

In the instant case, Defendants' SJ Motion was fully briefed, and oral argument thereon was held before Plaintiff filed the Motion to Amend. It is undisputed that discovery would need to be reopened if the Motion to Amend is granted. Defendants argue that reopening discovery would be seriously prejudicial to them. The Court's records and files in this case indicate that discovery in this Adversary Proceeding has been fraught with difficulty, as evidenced by three amendments to extend the discovery completion deadline before discovery closed. Defendants filed a Motion to Compel in order to obtain required discovery responses and documents from Plaintiff on several issues. The choreography surrounding Ritter's deposition required a Court hearing and determination. Defendants have already dealt with a long discovery process and now Plaintiff's Motion to Amend, if granted, would require discovery to be reopened, which will be prejudicial to Defendants. Moreover, Joseph is now incarcerated and, consequently, discovery may become even more difficult and expensive.

16
21-04041-lsg    Doc 135    Filed 11/20/23    Entered 11/20/23 16:53:16    Page 16 of 18

Plaintiff has not established good cause as to why he did not assert earlier the claims he now seeks to plead in the Amended Complaint. As the United States District Court noted in *Ford Motor Co. v. Kahne*, 379 F.Supp.2d 857, 878 (E.D. Mich. 2005), when a litigant waits until after the close of discovery and after the filing of dispositive motions before filing a motion to amend a complaint to include new or different legal theories, there is "'an increased burden to show justification for failing to move earlier' … Courts have also found that significant prejudice is caused by permitting a party to add a claim to its pleading after discovery has ended and after dispositive motions have been filed." *Id.* (Internal citations omitted).

In this case, Plaintiff was on notice as of March 8, 2021 that Defendants had raised as an affirmative defense that the funds in question were not property of the Individual Debtors' bankruptcy estate. Plaintiff was also on notice as of that date that Defendants would argue that WNRJ received funds in good faith. Plaintiff did not seek to amend the Complaint until almost two years later and after briefing and a hearing on Defendants' SJ Motion.

In *Kahne,* 379 F.Supp.2d 857, the district court addressed a situation similar to the instant case, wherein a party was on notice of a defense and still waited until after the close of discovery (and after the filing of a summary judgment motion) before moving to amend to add a new legal theory to address the defense. The

district court determined that "[b]ecause there is no good cause for Ford's delay and Defendant would be significantly prejudiced by this late amendment, it will not be permitted." *Id.* at 878. The same result is warranted here.

## Conclusion

For the reasons stated above, the Court denies Plaintiff's Motion to Amend. Plaintiff has not shown good cause to allow an amendment after the deadline set forth in the Scheduling Order, after the close of discovery, and after a hearing on Defendants' SJ Motion, and Defendants will be prejudiced via the undisputed need for additional discovery if the Motion to Amend is granted. The Court will enter a separate order consistent with this Opinion.

**Signed on November 20, 2023**



/s/ Lisa S. Gretchko

**Lisa S. Gretchko
United States Bankruptcy Judge**